## In re NEW STRAND THEATRE, Inc.

United States District Court
S. D. New York.

Dec. 27, 1952.

Levin & Weintraub, New York City, Benjamin Weintraub and Eugene N. Sosnoff, New York City, of counsel, for trustee.

Sidney H. Reich, White Plains, for petitioner.

WEINFELD, District Judge.

The petitioner seeks the review of an order of the Referee in Bankruptcy which rejected his bid for the purchase of certain of the bankrupt's assets, consisting of real property and its contents, for $18,700, subject to liens amounting to $11,750, and denied confirmation of the sale to him. The order further directed the resale of the premises to consider higher offers received after the original sale had been concluded, as well as such other and higher bids, if any, which might be submitted upon the resale.

The original sale, at which petitioner made his bid, was conducted on December 5th, before the Referee. This was pursu-

ant to an order previously entered, based upon a prior private bid of $10,000, subject to existing liens, which cash sum was fixed as the upset price. Appraisers appointed by the Referee had valued the property at $41,725. The sale had been extensively advertised and was well attended. The bidding started above the upset price, at $11,000, some twenty eight bids, each higher than the other, were made, until the petitioner offered $18,700, which was the highest. This offer of $18,700, plus the liens of $11,750, totalled $30,450, but was $843 less than $31,293.75, 75% of the appraised value of $41,725.

The attorney for the trustee, who acted as the auctioneer, announced the property sold to the petitioner. He then stated to the Referee, in the presence of the assembled group: "The bid is slightly below the 75% of the appraised valuation. We have discussed it with the trustee and we feel under the circumstances, in view of the fact that we have had spirited bidding and it has been amply advertised and inspected, that your Honor should confirm the sale," to which the Referee responded: "Submit order." However, no order was then submitted to, or signed by, the Referee. The trustee, on the day of the sale, duly deposited in his account a $5,000 check received from petitioner, which accompanied his bid. On the same day, the attorney for the trustee notified the petitioner's attorney that the closing of title would take place a week hence, December 12th, and also requested the title company to be ready to consummate the matter at that time.

Three days later, on December 8th, 1952, one of the unsuccessful bidders at the sale notified the trustee's attorneys that he desired to increase his bid to $20,000. On the same day they addressed a communication to the Referee, enclosing a proposed order of confirmation, advised him of the increased offer and called attention to his discretionary power to reopen the bids. Then, on December 11th, another prospective purchaser offered $25,000.

On December 12th, what was evidently an informal conference was held at the office of the Referee, attended by various interested parties. The trustee, notwithstanding his previous recommendation that the Referee confirm the sale, joined with creditors' representatives, who urged rejection of the petitioner's bid on the ground that it was less than the appraised value of the property, and urged reconsideration based upon the two increased offers. The petitioner, now represented by an attorney, pressed for confirmation of the sale. The Referee finally stated: "In the light of the substantially increased offer and also in view of the fact that the highest bid reached at the last special meeting that was called did not reach 75% of the appraised value, and particularly in view of the fact that these new offers have been brought to the attention of the court before the confirmation order had been signed, I feel it to the best interests of the creditors that the offer be rejected of Mr. Ratett [petitioner] and a new sale be held and the matter left open for all purposes." He thereupon signed an order refusing confirmation of the sale to petitioner and directing a new sale on December 30th, 1952. It is this order which petitioner seeks to reverse.

Since the sale was less than 75% of the appraised value, it was subject to the approval of the court. Section 70, sub. f of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. f, provides:

"* * * Real and personal property shall, when practicable, be sold subject to the approval of the court. It shall not be sold otherwise than subject to the approval of the court for less than 75 per centum of its appraised value."

Petitioner, in substance, contends that this provision of the law was observed. He urges that the circumstances attendant upon the sale on December 5th indicate that his bid, as the highest made thereat, was recommended by the trustee and his attorney to the Referee; that the Referee approved the sale then and there, and that the order of confirmation, although not signed, was a mere formality—a ministerial act—particularly so since § 70, sub. f does not specify any particular form of approval.

If the Referee did, in fact, approve the sale, petitioner is entitled to an order of

352

confirmation. If there was no approval, the question still remains whether there was, as petitioner further urges, an abuse of discretion in rejecting his bid.

 To spell out approval, petitioner must rely upon the actions of the trustee and Referee in connection with the events of the sale and those subsequent thereto. It is stating the obvious that the recommendations of the trustee and his attorney and their actions at the sale and subsequent thereto are not binding upon the Referee. An accepted bid by a trustee makes the bidder no more than the one whose proposal has been recommended.[1] Sales under § 70 of the Bankruptcy Act are not complete until confirmed,[2] and no action or conduct by the trustee can serve to establish such approval which involves the exercise of the court's discretion.

 Thus, I come to the remaining ground which petitioner advances to support his claim of an in fact approval, the Referee's statement, "Submit order," made at the conclusion of the sale and following the trustee's recommendation of acceptance of the bid. Any inference of approval, sought to be drawn from the direction for the submission of a proposed order, is negatived by the fact that the Referee signed no order of approval, made no statement of approval and stated during the course of the spirited bidding: "This is subject to confirmation." Finally, § 70, sub. f of the Bankruptcy Act, which gives the court power to confirm or set aside a sale of the bankrupt's property, requires the exercise of judicial discretion, and this may not be inferred. Judicial discretion is positive action taken in clear and unmistakable terms.

Under the circumstances, petitioner has failed to establish that the sale was, in fact, confirmed, and so he may not prevail on this ground.

 The remaining question is whether the Referee abused his discretion in rejecting petitioner's bid and ordering a new sale based upon the increased offers.

There is no question but that the sale was well advertised, that bidding was spirited and competitive, that petitioner's bid was the highest and made with good faith. Further, there is a question as to whether the increased bid of $20,000, made by the unsuccessful bidder, was stamped in good faith. But these circumstances give petitioner, as the highest bidder, no enforceable interest which compels automatic confirmation of the sale.[3] The matter is still one of the court's discretion.

A sale of a bankrupt's assets is a judicial sale, with its own distinguishing characteristics. Matter of Realty Foundation, Inc., 2 Cir., 75 F.2d 286; In re Klein's Rapid Shoe Repair Co., 2 Cir., 54 F.2d 495. In the latter case the principles governing such sales were enunciated:

"* * * Section 70 of the Bankruptcy Act (11 U.S.C.A. § 110) gives to the District Court the power to confirm or set aside, in its discretion, a sale of the bankrupt's property. Such sales are judicial sales which are not complete until confirmed. Until confirmation, even an accepted bid makes the bidder no more than the one whose proposal has been recommended. In re Burr Mfg. & Supply Co., 2 Cir., 217 F. 16, 19. Such a bidder before confirmation is not even vested with an equitable title to the property, and he cannot restrict the power of the court under section 70 of the statute. In re Wolke Lead Batteries Co. [6 Cir., 294 F. 509] supra; Bryant v. [Charles L.] Stockhausen Co., Inc., 4 Cir., 271 F. 921. See, also, The East Hampton, 2 Cir., 48 F.2d 542." 54 F.2d at page 496.

In re Stanley Engineering Corporation, 3 Cir., 164 F.2d 316, certiorari denied, Root v. Galman, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 417, decided subsequent to In re Klein's Rapid Shoe Repair Co., supra, and so heavily relied upon by petitioner in support of his position, is readily distinguishable. There, the bid not only exceeded 75% of

1. In re Klein's Rapid Shoe Repair Co., 2 Cir., 54 F.2d 495.

2. In re Klein's Rapid Shoe Repair Co., supra, 54 F.2d at page 496.

3. Matter of Wolke Lead Batteries Co., 6 Cir., 294 F. 509.

the appraised value, but was substantially in excess of the appraised value. Thus, it cannot be held as authority to require, in effect, automatic approval of the highest bid submitted at a fairly-conducted sale where the bid is below 75% of appraisal. To so hold would result in judicial repeal of § 70, sub. f of the Bankruptcy Act, which, as noted, involves the exercise of discretion by the court where the bid is less than the stipulated percentage.

The Referee, in refusing confirmation at the meeting of December 12th, found two factors which he deemed significant: (1) that the rejected bid was below 75% of the appraised value of the property; and (2) the higher of the increased bids exceeded by $6,300, or almost 35%, petitioner's rejected cash offer. Under General Order 47 of the Supreme Court, 11 U.S.C.A. following section 53, the Referee's findings of fact are to be accepted by the district court unless clearly erroneous. Under these circumstances, it cannot be held that the failure to accept petitioner's bid, even though it was the highest one at the original sale, was an abuse of discretion.

There is, however, one provision of the order of rejection and resale which requires modification. It provides that notice of the resale date need not be published. The order requires only that creditors of the estate and parties who noted their appearances at the hearings of December 5th, 1952 and December 12th, be notified. This may result in limiting the bidding at the resale to petitioner and the two subsequent bidders and in excluding other possible bidders who were present at the sale on December 5th (whose appearances were not noted), as well as any other prospective purchasers who, by reason of the new developments, may now find greater value in the property than heretofore. Fairness, as well as the interests of the estate, require that the public at large be given notice of the resale so that all may have an equal opportunity to make increased bids if they so desire.[4] In any event, no adequate basis has been established for the dispensing of the advertising of the sale, as required by Rule 13(c) of the Bankruptcy Rules of this court. The resale should be conducted only after adequate advertising, which, in this instance, should be to the same extent as that which preceded the original sale. The order is modified accordingly and the sale now scheduled for December 30th, 1952, shall be postponed to afford an opportunity to advertise as directed hereunder.

The situation which has resulted from the circumstances attendant upon the sale is regrettable. Petitioner, unfamiliar with law and the nature of judicial sales, understandably assumed when the property had been knocked down to him and steps taken to close the title, that he was the successful bidder. This impression was underscored by the various actions taken at, and subsequent to, the sale. As indicated upon the argument of the motion, I believe that a repetition of the occurrence herein might well be avoided if it is made crystal-clear that all offers, including the highest, are always subject to confirmation by the Court and that this does not take place until it is a fact. Attention should be drawn to Rule 13 of the Bankruptcy Rules of this district, which provides in part:

"(c) * * * The auctioneer shall announce that no sales will be final without special order of the court unless the sale realizes seventy-five per cent or more of the appraised value."

While it is important in the interests of the creditors to obtain maximum amounts realizable for estate assets, of equal, if not greater importance, is that situations be avoided which tend to undermine confidence in the stability of sales conducted under court auspices.

Settle order on notice.

---

4. Cf. Jacobsohn v. Larkey, 3 Cir., 245 F. 538, 543, L.R.A.1918C, 1176; Bovay v. Townsend, 8 Cir., 78 F.2d 343, 346, 105 A.L.R. 359; Pewabic Mining Co. v. Mason, 145 U.S. 349, 356, 12 S.Ct. 887, 36 L.Ed. 732; In re Stanley Engineering Corporation, 3 Cir., 164 F.2d 316, 320.